# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No.: _____

BARCLAYS CAPITAL INC.,

        Movant,

vs.

ILEANA D. PLATT and RAFAEL URQUIDI,

        Respondents.

_____/

## MOTION TO VACATE ARBITRATION AWARD IN PART AND BRIEF IN SUPPORT

      Movant, BARCLAYS CAPITAL INC., by and through undersigned counsel, hereby files its Motion to Vacate Arbitration Award in Part and Brief in Support, and in support thereof states as follows:

### Introduction

      Pursuant to the Federal Arbitration Act, Movant Barclays Capital Inc. ("Barclays") respectfully moves this Court to vacate certain portions of the arbitration award (the "Award") served on February 18, 2015 by a panel of arbitrators of the Financial Industry Regulatory Authority ("FINRA") in FINRA Case No. 14-00821, and to remand this matter to FINRA for rehearing before a new arbitration panel on the vacated portions.  Barclays recognizes that arbitration awards will be vacated only in rare instances, but this case is one such rare instance.  Vacating the award is necessary here to safeguard the integrity and impartiality of the arbitration process.  It is also necessary to prevent arbitrators from exceeding their powers by refusing to enforce undisputed, controlling agreements.

In the underlying arbitration, two former employees of Barclays, Ileana Platt and Rafael Urquidi, asserted employment-related claims against Barclays, a securities broker-dealer. Barclays counterclaimed based on promissory notes signed by Platt and Urquidi on November 26, 2012 (the "Notes"), in which they promised to repay the unpaid loan balance in the event their employment with Barclays ended for any reason. The terms of the Notes are clear and were not in dispute in the arbitration. Platt and Urquidi admitted in their sworn testimony that they understood and agreed to the terms of the Notes when they signed them and that a total of $3,816,907 is currently "due" under the Notes as the unpaid loan balance.

After three days of hearings, the arbitration panel properly denied all of Platt and Urquidi's employment-related claims with prejudice, but the panel exceeded its powers by ruling that **all debt owed** by Claimants [Platt and Urquidi] on the Notes executed on November 26, 2012, **is forgiven"** and thus denying Barclays' counterclaim on the Notes.[1]

The Court should vacate the portion of the Award that is adverse to Barclays based on either of two grounds. First, the Chairperson of the arbitration panel failed to disclose to Barclays that his nine-member CPA firm had been retained and compensated approximately $60,000 to give expert testimony for two other former employees against Barclays in a virtually identical FINRA case, which was tried March 2-5, 2015 – less than two weeks after the Award was served. The Chairperson knew or should have known of this conflict of interest prior to the arbitration hearing involving Platt and Urquidi and, pursuant to FINRA arbitrator-disclosure rules discussed below, should have revealed it; instead, he stated at the outset of the hearing that he did not have any further disclosures. This is exactly the type of substantial, hidden relationship that creates a potential for bias and a reasonable impression of partiality, which the

---

[1]        Unless otherwise noted, **bolded** emphasis is added.

United States Supreme Court and the Eleventh Circuit have held require vacatur of the Award. The Chairperson's concealment of this obvious conflict of interest undermined the integrity of a dispute resolution process that must be transparent and neutral.

Second, the Court should vacate the portion of the Award that is adverse to Barclays because the FINRA arbitrators exceeded their powers by imposing a loan "forgiveness" (a) that was not requested in Platt and Urquidi's arbitration claim, (b) that is contrary to the express, unambiguous, and undisputed repayment terms of the Notes, and (c) that lacks any contractual or other basis in applicable rule or law.  Under the Federal Arbitration Act, an arbitration award should be vacated "where the arbitrators exceeded their powers. . . ."  9 U.S.C. § 10(a)(4).  The United States Supreme Court has instructed that an arbitrator exceeds his powers, and vacatur is appropriate, "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'"  *Stolt-Nielsen S.A. v. Animalfeeds Intl. Corp.*, 559 U.S. 662, 671 (2010).  As the Supreme Court stated, "the task of an arbitrator is to interpret and **enforce a contract**, not to make public policy."  *Id.* at 672.  Here, the arbitrators did not even arguably interpret or enforce the Notes, nor did they apply any applicable rule, decision, or body of law.  Out of whole cloth, they simply fabricated an unauthorized remedy of loan "forgiveness" that directly contradicts the undisputed repayment terms of the Notes and the admitted debt owed on the Notes.

### The Parties

1.     Movant Barclays is organized under the laws of the State of Connecticut and is headquartered in New York.  Barclays is a registered securities broker-dealer and member of FINRA.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

2.      Respondents Ileana D. Platt and Rafael Urquidi are former employees of Barclays who reside in Miami-Dade County, Florida and thus are citizens of the State of Florida.  Ms. Platt resides at 3811 Riviera Drive, Coral Gables, Florida 33134.  Mr. Urquidi resides at 2216 Overbrook Street, Miami, Florida 33131.

## Jurisdiction and Venue

3.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, is greater than $75,000.

4.      This Court also has jurisdiction over the subject matter of this Motion pursuant to 9 U.S.C. § 10(c).

5.      This Court has personal jurisdiction over Respondents Platt and Urquidi because they are citizens and residents of the State of Florida and received an arbitration award pursuant to an arbitration proceeding that took place in Miami, Florida.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 9 U.S.C. § 10(c).

## Factual and Procedural Background

**A.      Platt and Urquidi's Employment by Barclays and Promise to Repay Notes**

7.      After a series of contractual negotiations that lasted several months, Barclays hired Platt and Urquidi in November 2012 to work as Investment Representatives in its Miami branch.  The terms of employment were set forth in definitive offer letters that Platt and Urquidi agreed to and signed.  *See* Affid. of David G. Russell ("Russell Affid.") at Ex. 2 at Ex. C and Ex. D (collectively, the "Offer Letters").  In the Offer Letters, Platt and Urquidi agreed to be at-will employees who were free to resign at any time for any reason or no reason, and who could be

terminated by Barclays at any time for any reason or no reason.  Offer Letters at p. 5.  They also agreed that "any dispute or controversy arising under or in connection with your employment . . . shall be settled on an individual basis by arbitration before FINRA, in accordance with its rules as then in effect . . . ."  Offer Letters at p. 4.

8.    As stated in the Offer Letters, Platt and Urquidi were each given the option of taking out a low-interest, unsecured, personal loan from Barclays Bank PLC, with the annual loan installments to be paid by Barclays until Platt or Urquidi's "employment with Barclays ends for any reason," in which event Barclays would stop making payments and Platt and Urquidi "will be responsible for all remaining payments of principal and interest pursuant to the terms of your loan with the Bank."  *See* Offer Letters at p. 2; Russell Affid. at Ex. 10 ("Platt Tr.") at Vol. 1, 109:18-24 (Platt testimony)).[2]  They chose to accept these loans and memorialized their promise to repay the loans in the Notes – they each testified that their receipt of the loan proceeds was conditioned upon agreeing to all of the terms of the Notes.  Platt Tr. at Vol. 1, 110:1-11 (Platt); Vol. 1, 114:11-22 (Platt); Vol. 2, 102:3-20 (Urquidi).  In the Notes, Platt and Urquidi each agreed to the following provision:

> 7.    <u>Default</u>: In the event of a default in payment under the terms of this Note, for any reason whatsoever, or **in the event that Borrower's employment with Barclays ends for any reason, voluntarily or involuntarily, before the loan has been fully repaid, the unpaid balance hereunder will become immediately due and payable,** together with the accrued interest on the unpaid principal . . . .

---

[2]    Under FINRA Rule 13606, the digital recording of the hearing is the official record of the proceedings.  For the convenience of the Court and counsel, Barclays had the recording transcribed, and it is attached to Russell Affid. as Ex. 10.  Barclays requests the Court's permission under Section 3H(7) of the CM/ECF Administrative Procedures to file the CD containing the digital recording.

*See* Russell Affid. at Ex. 2 at Ex. E and Ex. F; *see also* Platt Tr. at Vol. 1, 111:6-19 (Platt); Vol. 2, 102:16-103:5 (Urquidi).  There are no provisions in the Notes or the Offer Letters that allow the Notes to be "forgiven" by an arbitration panel under any circumstances.

9.    In early 2014, several months after Barclays announced it would discontinue serving customers in certain countries around the world, Platt and Urquidi voluntarily resigned from Barclays and went to work for other broker-dealers.

**B.    The Arbitration Claim and Hearing**

10.    On March 7, 2014, soon after Platt and Urquidi had resigned from Barclays to join its competitors, they filed their "Demand" (*i.e.*, their Statement of Claim) with FINRA.  *See* Russell Affid. at Ex. 1.  They asserted legal claims against Barclays for breach of contract, breach of an alleged implied covenant of good faith and fair dealing,[3] unjust enrichment, and negligent misrepresentation.  *See id.*[4]  They requested that the panel "offset . . . **the amount due under the loans**" against Barclays' alleged liability to them on their claims.  *See* Demand at p. 10.  In their claim, they did not seek "forgiveness" of the amounts admittedly due under the Notes.[5]

11.    On May 22, 2014, Barclays timely filed its Answer to the Demand, along with a Counterclaim requesting that the panel order Platt and Urquidi to repay the outstanding principal and interest due under the Notes, as well as all costs associated with Barclays' efforts to collect

---

[3]    As shown in Barclays' Pre-Hearing Brief, no such implied covenant exists in an at-will employment relationship.  *See* Russell Affid at Ex. 8, at pp. 13-14.

[4]    At the hearing, Platt and Urquidi withdrew their claim for negligent misrepresentation. *See* Russell Affid. at Ex. 4, p. 2.

[5]    Rule 13302 of the FINRA Code of Arbitration Procedure for Industry Disputes states that claimants such as Platt and Urquidi "must file . . . [a] statement of claim specifying the relevant facts and remedies requested."  After filing their Demand, Platt and Urquidi never sought to amend it under FINRA Rule 13309 ("Amending Pleadings") or otherwise.

the amounts due under the Notes, in accordance with the express terms of the Notes.  *See* Russell Affid. at Ex. 2.[6]

12.     On January 13, 2015, following discovery, the parties exchanged witness lists and pre-hearing briefs.

13.     The final hearing was held in Miami, Florida on February 2-4, 2015.

14.     At the hearing, **Platt and Urquidi testified that they understood the terms of the Notes when they signed them and that a total of $3,816,907 is currently due under the Notes.**  *See* Platt Tr. at Vol. 1, 109:18-24 (Platt); Vol. 1, 111:6-16 (Platt); Vol. 2, 10:11-17 (Platt admits $2,565,140 is "due under the promissory note"); Vol. 2, 102:3-20 (Urquidi); Vol. 2, 103:6-20 (Urquidi admits $1,251,766 is "due under the note right now").  Platt admitted that it was industry standard to have to repay the unpaid balance in the event of employment termination.  Platt Tr. at Vol. 1, 115:21-116:8.

15.     Ms. Platt specifically testified:

Q     And you understood that if you did accept a personal loan from the bank that you would have to sign a promissory note; correct?

A     I did.

Q     And that was attached here; right?

A     Yes

Q     Starting at page nine going to page eleven?

A     Yes sir.

Q     And when you got these documents from Ms. Gonzalez you read them; right?

A     I did.  (Platt Tr. at Vol. 1, 110:1-011.)

---

[6]     Following Platt and Urquidi's resignations, Barclays Bank PLC assigned the Notes to Barclays, which counterclaimed to enforce the Notes.  Russell Affid. at Ex. 2 pp. 4-10 and Ex. A and B.

*      *      *

Q     In regarding the loan.  If your employment with Barclays ends for any reason other than death or total disability voluntarily [or] involuntarily Barclays will not make any further payments of principle [sic] and interest to the bank on your behalf and you will be responsible for all remaining payments of principle [sic] and interest pursuant to the terms of your ---. Do you see that?

A     I do.

Q     And ultimately you agreed to that language; didn't you?

A     I did.

Q     And you didn't request any changes in that language; did you?

A     I didn't.  (*Id.* at Vol. 1, 111:6-19.)

*      *      *

Q     But . . . you agreed that in the event that your employment with Barclays ended for any reason you would repay the unpaid balance of the note; right?

A     Yes.

Q     And you understood that Barclays was not going to wire $2,992,663.00 to you unless you agreed to the terms of the promissory note; right?

A     Yes.  (*Id.* at Vol. 1, 114:11-22.)

*      *      *

Q     And you accepted all the terms of the promissory note; correct?

A     Yes.  (*Id.* at Vol. 1, 115:9-11.)

*      *      *

Q     So you understood in your negotiations with Barclays that you could be terminated by it at any time without any reason?

A     Yes.

Q     And if it did terminate you let's say in February of 2013 you would owe the unpaid balance of the note ---?

- 8 -

A      That's what it says.

Q      And that's pretty much ---

A      In the contract.

Q      Industry standard; isn't it?

A      Yes.  (*Id.* at Vol. 1, 115:21 – 116:8.)

                  *      *      *

Q      And you admit – don't you – I read the pleadings in this case.  You admit that this amount of $2,565,140 is the amount due of the -- the unpaid principal balance due under the promissory note; right?

A      It's the unpaid principal balance.

Q      Due under the promissory note.

A      Yes.  (*Id.* at Vol. 2, 10:11-17.)

16.    Mr. Urquidi testified:

Q      * * * So you agreed and accepted the written terms of the promissory note that you signed in exchange for being able to borrow $1.4 million; correct?

A      That's correct.

Q      And you had a chance to review those terms and conditions in the promissory note before you decided that you wanted to take the option of borrowing money pursuant to the personal loan; right?

A      Yes.

Q      And you actually reviewed the promissory note and sent an e-mail to Ms. Gonzalez saying the promissory note is fine; right?

A      I sent that e-mail.

Q      And one of the agreements that you made in exchange for getting the money was that you would repay it if your employment with Barclays ended for any reason; right?

A      That's correct.

Q      And your employment with Barclays –

CHAIRPERSON LEVINE:  Excuse me, can you speak up a little louder?

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

MR. URQUIDI:  Yes.

BY MR. RUSSELL:

Q    And your employment with Barclays has now ended –

A    It has.

Q    -- for any reason; right?

A    Yes.

Q    All right, and the amount that is due under the terms of your promissory note, after Barclays made the first installment payment in November of 2013, is this net amount of principal here, $1,251,766; correct?

A    Yeah.

Q    And you also agreed to pay interest in that note; didn't you?

A    Yes.

Q    And you agreed to pay cost of collection as specified in paragraph 6 to the promissory note; right?

A    Correct.

Q    So this is on the principal amount, up her [sic] at the top it's 1 million – 1.25 million, that's the amount due under the note right now; right?

A    Yes.  (Platt Tr. at Vol. 2, 102:3 - 103:20.)

17.    Despite Platt and Urquidi not requesting a remedy of loan "forgiveness" in their Demand, the Chairperson of the panel, Jerrold Levine, interjected the notion of loan "forgiveness" on the second day of the hearing, after Platt and Urquidi had presented their alleged damages on their employment-related claims against Barclays:

MR. LEVINE:   The request also, or the claim also requests the -- [forgiveness] of the balance on the notes.   That's not in your damages thing.  But this is in addition to that.[7]

---

[7]    The digital recording of the hearing shows that the ellipsis is the word "forgiveness."  *See* footnote 2, above.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

MR. BUCHDAHL:  That's correct.

MR. LEVINE:  So actually your [sic] requesting us to consider, emphasis on consider, this amount of damages plus the forgiveness of the obligation.

MR. BUCHDAHL:  That's exactly right.

MR. LEVINE:  Okay.

MR. BUCHDAHL:  So there are two claims.  There's Barclays claims against our clients.  We say they should not be able to collect on that.

MR. LEVINE:  Okay.

MR. BUCHDAHL:  The reason we've stated.  There's our claims of damages against them.  Our claims are a slightly greater dollar figure I think than their claim against us.  But obviously the panel needs to weigh those two claims independently in --

MR. LEVINE:  Definitely.

MR. BUCHDAHL:  -- its determination.

Platt Tr. at Vol. 3, 51:1-21.  At no other point in the proceedings was there any discussion of loan "forgiveness" as a remedy.[8]

## C.    The Award

18.    On February 18, 2015, FINRA served the following Award:

1.    Claimants' [Platt and Urquidi's] requests that they owe nothing to Respondent [Barclays] pursuant to Claimants' signed Notes executed on November 26, 2012, are granted and **all debt owed** by Claimants on the Notes executed on November 26, 2012, **is forgiven**.

2.    Claimants are not liable and Respondent's Counterclaim is denied in its entirety, with prejudice.

3.    The parties are responsible for their respective attorneys' fees.

---

[8]    In his closing arguments, counsel for Platt and Urquidi requested "cancelling the promissory note," *i.e.,* ignoring its terms. Platt Tr. at Vol. 5, 89:7-9.  Barclays made it clear from its Counterclaim and throughout the hearing that Platt and Urquidi owed the full unpaid balance of the Notes, a point conceded by Platt and Urquidi in their sworn testimony as quoted above.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

4.      Claimants' remaining requests for relief are denied, with prejudice.

5.      Any and all relief not specifically addressed herein, including Claimants' request for punitive damages, is denied.

*See* Russell Affid. at Ex. 4.  (The Award had been executed by the arbitrators on February 10 and 11, 2015.)

19.     In sum, the panel acknowledged that there was a debt owed by Platt and Urquidi to Barclays on the Notes and did not find any liability on the part of Barclays to Platt or Urquidi. *Id.*  Thus, there were no offsetting, mutual liabilities between the parties.  Inexplicably, the panel denied with prejudice Barclays' Counterclaim by "forgiving" the debt owed on the Notes.  *Id.*

**D.     Arbitrator Selection and the Panel Chairperson's Violation of His Disclosure Obligations**

20.     At the outset of the arbitration process, and as required by FINRA's Code of Arbitration Procedure, FINRA had provided a list of proposed arbitrators to both Barclays and Platt/Urquidi.  The proposed arbitrator list included the names and background on 30 potential arbitrators, their initial disclosures, and a list of their past FINRA awards.

21.     After the parties submitted their rankings and strikes, FINRA appointed Jerrold Levine as the Chairperson of the panel.

22.     Chairperson Levine had disclosed in his FINRA Arbitrator Disclosure Report that from 1990 through the present (25 years), he has been employed by the CPA firm Pinchasik Yelen Muskat Stein LLC.  *See* Russell Affid. at Ex. 3.  As of January-February 2015, that firm was comprised of nine members, including Mr. Levine and another CPA named Harvey Muskat. *See* Russell Affid. at ¶ 11 and Ex. 6.

23.     In early January 2015, prior to the witness disclosure date of January 13, 2015, Jacob Buchdahl, arbitration counsel for Platt and Urquidi, informed David Russell, arbitration counsel for Barclays, that Platt and Urquidi were considering retaining Mr. Muskat as a damages

expert witness in their arbitration against Barclays.  *See* Russell Affid. at ¶ 6.  Mr. Buchdahl

stated that Mr. Muskat and Mr. Levine were affiliated with the same CPA firm in Miami but did

not state that Mr. Muskat or Mr. Levine had spoken with each other about the possible retention

of Mr. Muskat adverse to Barclays.  *Id.*  Mr. Russell objected because of the conflict of interest,

and Mr. Buchdahl thereafter did not list Mr. Muskat as a witness for Platt and Urquidi.  *Id.* at ¶ 7.

24.     At the start of the arbitration hearing, Chairperson Levine affirmed that he did not

have any further disclosures beyond those provided in his FINRA Arbitrator Disclosure Report.

*See* Platt Tr. at Vol. 1, 3:8-11.  Based on the Chairperson's affirmation, Barclays accepted the

panel.  *Id.* at Vol. 1, 9:1-2.

25.     On March 2-5, 2015, just two weeks after the Platt/Urquidi award was served by

FINRA, Barclays tried a virtually identical FINRA arbitration in which two of its former

employees from the same Miami branch, Carlos Gallo and Jeannie Adams, had, like Platt and

Urquidi, asserted employment-related claims against Barclays.  Barclays then counterclaimed

based on promissory notes whose repayment terms were virtually identical to those signed by

Platt and Urquidi.

26.     In the Gallo/Adams arbitration hearing, their counsel argued that the Gallo/Adams

case was "very similar" to and "almost a mirror image of" the Platt/Urquidi case, such that the

Platt/Urquidi arbitration award should be admitted as evidence to show that the Platt/Urquidi

arbitration panel (chaired by Jerrold Levine) ruled against Barclays on its promissory note claim

by ordering that the loans were "forgiven in full."  Russell Affid. at Ex. 11 ("Gallo Tr.") at Vol. 1

(March 2, 2015), 17:21-23, 18:25–19:6, 20:9-10.  Gallo/Adams further sought to benefit from the

Platt/Urquidi award by preparing a demonstrative that highlighted the Platt/Urquidi panel's loan

forgiveness.  *See* Russell Affid. at ¶ 12 and Ex. 7.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

27.    As their damages expert witness, Gallo and Adams called Harvey Muskat, whom they had not identified as a potential witness until February 10, 2015, after the Platt/Urquidi arbitration had been concluded.  *See* Russell Affid. at ¶ 10 and Ex. 5.  On cross-examination on March 4, 2015, Mr. Muskat stated that he had been with the CPA firm of Pinchasik Yelen Muskat Stein for 23 years.  Gallo Tr. at Vol. 3 (March 4, 2015), 103:18-20.  Mr. Muskat admitted that he had communicated in January 2015 with Jerrold Levine – his partner for over 20 years – about their firm's potential engagement to testify for Platt and Urquidi and against Barclays, to which Mr. Levine responded "it would certainly create a conflict."  *Id.* at 104:5-14; *see generally id.* at 101:25-105:20.  Mr. Muskat further testified:  "I was kind of hoping he would step down from the panel, so I could be the expert.  But, but he didn't see it that way."  *Id.* at 105:16-20.  Mr. Muskat testified that, at the time of his discussion in January 2015 with Mr. Levine, their CPA firm had already been engaged to testify for Gallo and Adams, for which the firm – of which Levine and Muskat are members – was compensated approximately $60,000 to be "divided up among the members of the firm."  *Id.* at 104:23-25; 101:25-103:17.  Although he remembered other details in his testimony, Mr. Muskat could not remember if he told Mr. Levine that their CPA firm was working for Gallo and Adams adverse to Barclays.  *Id.* at 105:1-8.  But it is fair and logical to infer from the circumstances, including the 23-year relationship between Mr. Muskat and Mr. Levine, and the fact that their CPA firm had already been retained for one case adverse to Barclays and was contemplating another case, that Mr. Muskat shared that information with Mr. Levine.

28.    In the Platt/Urquidi case, Chairperson Levine never disclosed that (a) his CPA firm had been retained and compensated to provide expert testimony on behalf of claimants against Barclays in a virtually identical case; (b) he had had discussions with his partner Muskat

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

concerning their CPA firm's possible retention by Platt and Urquidi adverse to Barclays; or (c) he told Muskat that their firm's potential engagement for Platt/Urquidi against Barclays "would certainly create conflict."  Had Chairperson Levine made any of these required disclosures in the Platt/Urquidi hearing, Barclays never would have accepted the panel due to the conflict of interest.  As it happened, Barclays accepted the panel after Mr. Levine represented that he had nothing to disclose.

29.     Rule 13408 of the FINRA Code of Procedure for Industry Disputes provides:

(a)     Before appointing arbitrators to a panel, the Director will notify the arbitrators of the nature of the dispute and the identity of the parties.  Each potential arbitrator **must make a reasonable effort to learn of**, and **must disclose** to the Director, any circumstances which **might** preclude the arbitrator from rendering an objective and impartial determination in the proceeding, including: . . .

(3)  Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, **partners**, or **business associates**. . . .

(b)     The obligation to disclose interests, relationships, or circumstances that **might** preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a **continuing dut**y that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, **at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered**.

The FINRA Dispute Resolution Arbitrator's Guide provides:

Arbitrators must be impartial and neutral throughout a proceeding. . . . Arbitrators must be impartial in both appearance and fact. * * * Upon accepting an appointment, **arbitrators should avoid entering into any financial, business or other relationship that is likely to affect impartiality or might reasonably create an appearance of partiality or bias.**  For example, an arbitrator should not accept any engagement involving a party while an arbitration case is pending, nor do so for a reasonable period of time after the case concludes.  Likewise, arbitrators should disclose previous cases for which they were retained that involved any party, counsel, or witness in the current case.

\*       \*       \*

> Arbitrator disclosure is the cornerstone of FINRA arbitration, and the arbitrator's duty to disclose is continuous and imperative. Disclosure includes any relationship, experience and background information that may affect – or even appear to affect – the arbitrator's ability to be impartial and the parties' belief that the arbitrator will be able to render a fair decision. When making disclosures, arbitrators should consider all aspects of their professional and personal lives and disclose all ties between the arbitrator, the parties and the matter in dispute, no matter how remote they may seem.

*See* Russell Affid. at Ex. 9 (FINRA Dispute Resolution Arb. Guide (Dec. 2014 ed.) at 14, 17).

FINRA instructs its arbitrators to disclose any relationships that might create an appearance of partiality or bias, including:

- Current or prior representation for (or against) any of the parties in the arbitration or their related entities.

- **Service as an expert witness for (or against) any of the parties**, their related entities or counsel to the arbitration.

*See* Russell Affid. at Ex. 12, FINRA's Publication "Your Duty to Disclose" (Aug. 2013 ed.) at 13 of 49. Here, Mr. Levine failed to disclose his firm's lucrative service as an expert witness against Barclays, a fact that Barclays did not discover until it was too late to object to Mr. Levine's service as an arbitrator.

### Grounds for Vacating Arbitration Award

**A.     Partial Vacatur is Warranted Under § 10(a)(2) Due to Evident Partiality on the Part of the Chairperson of the Arbitration Panel.**

30.     The portion of the Award adverse to Barclays should be vacated under § 10(a)(2) because "there was evident partiality . . . in the arbitrators." 9 U.S.C. § 10(a)(2). Evident partiality exists where "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *University Commons-Urbana Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1341 (11th Cir. 2002). "This rule is meant to be applied stringently" in an arbitration context. *Id.* at 1338; *see also Middlesex Mut.*

*Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982) (The rule is "somewhat analogous to a *per se* rule or irrebuttable presumption requiring the award to be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts which could impair his judgment.") (internal quotation marks and citations omitted).

31.     A party moving to vacate an arbitration award need not prove an actual conflict of interest or that the arbitrator was in fact biased in order to establish that vacatur under § 10(a)(2) is warranted.  Rather, evident partiality under § 10(a)(2) exists where "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists," *i.e.*, where the facts would "create a reasonable impression of partiality." *University Commons-Urbana*, 304 F.3d at 1339.  Arbitrators are required to "disclose to the parties **any dealing that might create an impression of possible bias**.  The key word in this rule is 'impression.'  'Whether the arbitrator's decision itself is faulty is not necessarily relevant.'" *University Commons-Urbana*, 304 F.3d at 1338 (citing *Commonwealth Coatings*, 393 U.S. at 149 (1968); *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996)).  Here, the record is clear that Chairperson Levine interjected the notion of loan "forgiveness" into the proceedings (Platt Tr. at Vol. 3, 51:1-21) and controlled the proceedings, which ultimately resulted in an award that "forgives" $3,816,907 admittedly due and owing as the unpaid principal balance under the Notes.

32.     Thus, the United States Supreme Court and the Eleventh Circuit have held "that where an arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed." *Middlesex*, 675 F.2d at 1201 (citing *Commonwealth Coatings*, 393 U.S. at 151-52).

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

33.    These requirements have been adopted by FINRA and are contained in its Code of Arbitration Procedure for Industry Disputes and its Arbitrator's Guide, the provisions of which are applicable and binding where, as here, the parties agree that the "rules of FINRA relating to arbitration" apply by submitting to FINRA jurisdiction.  *See* FINRA Code of Procedure for Industry Disputes Rule 13408; FINRA Dispute Resolution Arb. Guide (Dec. 2014 ed.) at 14, 17; *CF Global Trading, LLC v. Wassenaar*, 2013 WL 5538659, at *8 and n. 5 (S.D.N.Y. Oct. 8, 2013) (FINRA "instructs arbitrators" through the Code of Arbitration Procedure and the Arbitrator's Guide).

34.    The evident partiality standard is met here.  Chairperson Levine failed to disclose facts that would "create an impression of possible bias." *University Commons-Urbana*, 304 F.3d at 1338.  The fact that Chairperson Levine's small CPA firm and one of its eight other members had been retained and compensated $60,000 to assist and testify on behalf of two claimants **adverse** to Barclays in a "mirror image" FINRA arbitration would give any objective observer a reason to doubt Mr. Levine's impartiality.  Chairperson Levine's firm's adverse relationship to Barclays in a case that was tried just two weeks after the Platt/Urquidi award is exactly the type of relationship that would give any reasonable person the impression of "possible bias" or "potential conflict" that FINRA's rules require arbitrators to disclose.

35.    Because the Chairperson failed to disclose information that would lead a reasonable person to believe that a potential conflict exists," vacatur is required of that portion of the Award that is adverse to Barclays.  *See University Commons-Urbana*, 304 F.3d at 1341. Otherwise, the integrity and neutrality of the FINRA arbitration process will be undermined.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

**B.      Partial Vacatur is Warranted Under § 10(a)(4) Because the Arbitrators Exceeded Their Powers.**

36.      To the extent that the Award "forgives" the Notes and denies Barclays' Counterclaim on the Notes, the Award should be vacated under § 10(a)(4) because the arbitrators "exceeded their powers" by entering an Award that is contrary to the express, unambiguous, and undisputed terms of the Notes.  The arbitration panel did not even arguably interpret the Notes, and the Award has no basis in any applicable rules, decisions, or body of law.

37.      The United States Supreme Court has held that an arbitrator's decision is unenforceable "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice.'"  *Stolt-Nielsen*, 554 U.S. at 671. *See also Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2069 (2013) (explaining that the FAA "permits courts to vacate an arbitral decision . . . when the arbitrator strayed from his delegated task of interpreting a contract . . . .").  In that situation, an arbitrator exceeds his task, which is "to interpret and enforce a contract, not make public policy."  *Stolt-Nielsen*, 539 U.S. at 672 (vacating arbitration award where "what the arbitration panel did was simply impose its own view of sound policy").  The FAA authorizes courts to vacate arbitration awards where "the arbitrator strayed from his delegated task of interpreting a contract," and instead "imposed [his] own conception of sound policy" thereby exceeding his powers.  *Sutter*, 133 S. Ct. 2064, 2069-2070.

38.      If an arbitrator issues "an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract," the court may vacate the award. *Wiand v. Schneiderman,* 778 F.3d 917, 926 (11th Cir. 2015) (quoting *Sutter*).

39.      The Eleventh Circuit has further explained, "in the rare instance where a court finds that a contract 'lack[s] any contractual basis for [the relief granted]' . . . it must proceed to

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

the analysis directed by *Stolt-Nielsen* and ask whether the arbitrator 'identif[ied] and appl[ied] a rule or decision derived from the FAA' or other applicable body of law or, alternatively, merely 'imposed its own policy choice and thus exceeded its powers.'"  *Southern Commc'ns. Servs. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013) (internal citations omitted).

40.     In another recent opinion, the Eleventh Circuit indicated that a conflict between an award and the plain language of the contract at issue is evidence that the arbitrators did not interpret the contract.  *Southern Mills, Inc. v. Nunes*, 586 Fed. Appx. 702, 704 (11th Cir. 2014). In *Southern Mills*, the plaintiff argued that an arbitration award should be vacated because the award found that a client of one of the parties was a third party beneficiary under the contract, even though the contract did not contain a third party beneficiary clause.  *Id.*  Although the court found that the arbitrator's ruling did not actually conflict with the terms of the contract, it implicitly acknowledged that an award that conflicts with the terms of the contract at issue should be vacated under 9 U.S.C. § 10(a)(4).

41.     The Eleventh Circuit's opinion in *Southern Mills, Inc. v. Nunes* is consistent with the holdings of the United States Supreme Court and the other circuits that "the arbitrator may not ignore the plain language of the contract."  *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also CP Kelco US, Inc. v. Intl. Union of Operating Engineers*, 381 Fed. Appx. 808, 815 (10th Cir. 2010) (affirming vacatur of arbitration award because "the arbitrator exceeded his authority by not drawing his decision from the essence of the [contract] and by impermissibly amending the [contract]"); *Three S. Delaware, Inc. v. DataQuick Info. Sys. Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) ("As we have recognized, an arbitration award can be vacated by a district court when the arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of

right and wrong."); *Star Tribune Co. v. Minnesota Newspaper Guild Typographical Union*, 450 F.3d 345, 348 (8th Cir. 2006); *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 905 (5th Cir. 1984) ("An arbitrator may not disregard or modify plain and unambiguous provisions of the agreement.").

42.     In "forgiving" the Notes and denying Barclays' Counterclaim on the Notes, the arbitration panel in this case exceeded its powers by entering the Award, which directly conflicts with the undisputed terms of the Notes.  The Notes signed and agreed to by Platt and Urquidi require them to repay the outstanding balance immediately if their employment with Barclays ended for any reason, voluntarily or involuntarily.  Platt and Urquidi each testified that they understood this provision when they signed the Notes and that a total of $3,816,907 is currently "due" under the Notes.  *See* Platt Tr. at Vol. 2, 10:11-17 (Platt); Vol. 2, 103:6-20 (Urquidi).

43.     There are no provisions in the Notes that allow the Notes to be "forgiven" under any circumstances by any arbitration panel.

44.     There is no applicable rule or decision derived from the FAA or any body of law that authorizes the Notes to be "forgiven."  There is simply no basis that would empower the panel to "forgive" the Notes.

45.     In their Demand, which was never amended, Platt and Urquidi did not request that the panel "forgive" the Notes.  Rather, they requested an "offset of the amount due under the loans."  *See* Russell Affid. at Ex. 1, Demand at p. 10.  An "equitable setoff" is "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor," or "the balancing of **mutual** liabilities with respect to a pledge relationship."  *Black's Law Dictionary*, 9th ed.; *see also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995) ("The right of setoff . . . allows entities that **owe each other** money to apply their **mutual** debts against each other . . . .")

- 21 -

(emphasis added); *Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1331 n. 9 (M.D. Fla. 2001) ("Recoupments and set-offs are legal mechanisms to offset, displace, or deduct one's liability against that of the opposing party.").

46.    Setoff is appropriate only when there are mutual liabilities that should be netted against each other.  For example, in *Pochat v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-22397-CIV, 2013 WL 4496548 (S.D. Fla. Aug. 22, 2013), the court properly allowed Merrill Lynch to offset the $200,000 it owed to its former employee Pochat against the $848,915 that Pochat owed to Merrill Lynch on a promissory note.  *Id.* at *17 - *20.

47.    Here, Platt and Urquidi asked the panel to offset Barclays' alleged liability to them (on their "independent" employment-related claims) against their liability to Barclays for amounts admittedly due under the Notes.  They stated to the panel that it should determine "those two claims [Barclays' claim on the Notes and their employment-related claims] independently in . . . its determination."  Platt Tr. at Vol. 3, 51:1-21.  Because the panel **denied** all of Platt and Urquidi's claims for damages against Barclays, the panel did not and could not offset against the amounts Platt and Urquidi admitted they owed under the Notes.

## Notice of Proceedings

48.    In accordance with 9 U.S.C. § 12, Barclays served this Motion on Platt and Urquidi within three months after FINRA delivered the Award to the parties.  Consistently, FINRA states that a "motion to vacate must be filed within the time period specified by the applicable statute."  *See* FINRA, Awards FAQs, attached to Russell Affid. at Ex. 13 at ¶ 1; *see also* Russell Affid. at Ex. 12, p. 37 of 49.

49.    In accordance with 9 U.S.C. § 12, service of this Motion on Platt and Urquidi will be made in the same fashion as prescribed by law for a notice of motion in an action in this Court.

**Request for Relief**

50.     Barclays respectfully requests that the Court enter an Order:

(a)     vacating the Award to the extent that it declares that "Claimants' requests that they owe nothing to Respondent pursuant to Claimants' signed Notes executed on November 26, 2012, are granted and all debt owed by Claimants on the Notes executed on November 26, 2012, is forgiven," (*See* Russell Affid. at Ex. 4 at 3, ¶ 1),

(b)     vacating the Award to the extent it finds that "Claimants are not liable and Respondent's Counterclaim is denied in its entirety, with prejudice" (Id. at ¶ 2), and

(c)     remanding this case for rehearing before a new arbitration panel on the vacated portions, such that Barclays may proceed afresh with its claim under the Notes for the unpaid balance, costs of collection, and interest.

51.     Barclays further requests that, to the extent further fact-finding is necessary, the Court grant Barclays leave to conduct limited discovery into the December 1, 2014 through March 31, 2015 communications and dealings among Mr. Levine, Mr. Muskat, and other members or employees of their CPA firm regarding issues related to this Motion to Vacate, including but not limited to the compensation received by the CPA firm or its members in connection with their work adverse to Barclays. *See University Commons-Urbana*, 304 F.3d at 1341 (remanding case for evidentiary fact-finding on the grounds that the moving party presented prima facie proof of the arbitrator's evident partiality); *Antietam Inds., Inc. v. Morgan Keegan & Co., Inc.*, 2012 WL 4513763, at *2 (M.D. Fla. 2012) (recognizing the right of a party to depose an arbitrator on issues limited to his alleged partiality).

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

Dated this 15th day of May, 2015.

Respectfully submitted,

*/s/ Thomas E. Scott*
Thomas E. Scott
Florida Bar No. 149100
Scott Cole
Florida Bar No. 885630
Cole, Scott & Kissane, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
Telephone: (305) 350-5385
Facsimile: (305) 373-2294
Email: thomas.scott@csklegal.com
Email: scott.cole@csklegal.com

and

David G. Russell
*Pro Hac Vice Admission Pending*
G. Wayne Hillis
*Pro Hac Vice Admission Pending*
Parker Hudson Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email:  drussell@phrd.com
Email: whillis@phrd.com

*Attorneys for Movant Barclays Capital Inc.*

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document and the corresponding Notice of Electronic Filing was served by U.S. Mail on May 15, 2015 on Respondents Ileana D. Platt and Rafael Urquidi to their last known mailing addresses.  I further certify that a true and correct copy of the foregoing document and the corresponding Notice of Electronic Filing was served by U.S. Mail and email on May 15, 2015 to Ms. Platt's and Mr. Urquidi's attorney in the related arbitration proceedings, Jacob W. Buchdahl.

<u>/s/Thomas E. Scott</u>
Thomas E. Scott

## SERVICE LIST

Ileana D. Platt
3811 Riviera Drive
Coral Gables, Florida 33134

*Respondent*

Jacob W. Buchdahl, Esq.
Susman Godfrey LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
Telephone: (212) 336-8338
Facsimile: (212) 336-8340
E-mail: jbuchdahl@susmangodfrey.com

*Attorney for Respondents Ileana D. Platt and Rafael E. Urquidi*

Rafael E. Urquidi
2260 Overbrook Street
Coconut Grove, Florida 33133

*Respondent*

Mr. Urquidi
2216 Overbrook Street
Miami, Florida 33131

*Respondent*

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX