# EXHIBIT 2

# AWARD
## FINRA Dispute Resolution

In the Matter of the Arbitration Between:

**Name of Claimant**

UBS Financial Services, Inc.

vs.

**Names of Respondents**

William Hunter Brennan and
Shane Gavin Springman

Case Number: 10-01371
Hearing Site: Detroit, Michigan

## NATURE OF THE DISPUTE

Member vs. Associated Persons

## REPRESENTATION OF PARTIES

UBS Financial Services, Inc. ("Claimant") was represented by Brian S. Hormozi, Esq., Schuyler, Roche & Crisham, P.C., Chicago, Illinois.

William Hunter Brennan ("Brennan") and Shane Gavin Springman ("Springman"), hereinafter collectively referred to as "Respondents," were represented by David M Foster, Esq., David M. Foster, P.C., Farmington Hills, Michigan.

## CASE INFORMATION

The Statement of Claim was filed on or about March 18, 2010. The Submission Agreement of Claimant was signed on or about March 18, 2010, by Molly Tatman, Director, Associate General Counsel.

The Statement of Answer was filed jointly by Respondents on or about May 21, 2010. The Submission Agreement of Brennan was signed on or about April 22, 2010. The Submission Agreement of Springman was signed on or about April 21, 2010.

## CASE SUMMARY

Claimant asserted the following cause of action: breach of employee forgivable loans. The cause of action related to the balance on two Promissory Notes which became due and owing upon termination of Respondents' employment with Claimant.

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 2 of 7

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted affirmative defenses.

## RELIEF REQUESTED

Claimant requested an award in the amount of:

| | |
|---|---|
| Actual/Compensatory Damages | $ 444,302.17 |
| Interest | Unspecified |
| Attorneys' Fees | Unspecified |
| Other Costs | Unspecified |
| Other Monetary Relief | Unspecified |

Respondents requested that the claims asserted against them be denied in their entirety and that they be awarded their costs and attorneys' fees.

## OTHER ISSUES CONSIDERED & DECIDED

The Arbitrator acknowledges that he has read the pleadings and other materials filed by the parties.

At the hearing, Claimant argued a Motion in Limine (to allow no testimony that challenges the validity of the Promissory Notes). The Motion was denied on the record at the hearing.

An explained decision was not requested by the parties. Notwithstanding, the Arbitrator was of the view an explanation was warranted. The Arbitrator's Decision, Order, and Award follows:

> Claimant, UBS Financial Services, Inc., paid certain amounts to each Respondent when they first joined Claimant as "financial advisors." Each Respondent signed a Letter of Understanding and a Promissory Note. Each Respondent was formerly employed by Smith Barney in its Kalamazoo office. In 2007 they were invited to join the Claimant and the Claimant indicated that it was going to open a Kalamazoo office.
>
> As a backdrop, UBS desired to create a Kalamazoo beach head. That is why UBS hired these Respondents in 2007 to begin the Kalamazoo office. The Respondents were well-established financial advisors in Kalamazoo. UBS' desire was to use them to begin the new Kalamazoo office.
>
> However, this was a business relationship that had difficulty almost from its beginning. Causes of the deterioration in the relationship are varied

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 3 of 7

and contested. Notwithstanding, it appears a good deal of the issues were caused by the inability of UBS to carry out its plans for a fully functional, profitable Kalamazoo office. That inability led to eventual failure of that office. The final blow to the relationship was imposed upon Respondents by a dramatic unilateral change in the city where Respondents were to work. Respondents had built their business relationships and their personal lives based upon their Kalamazoo presence.

UBS contends that the office was not profitable and made a decision to close the Kalamazoo office and move Respondents to the Grand Rapids office. There was no prior consultation with the Respondents, as the testimony revealed, and without regard to the effect it would have on both personal and client issues Respondents would be forced to face.

The quandary before the Arbitrator is what is fair and equitable to both sides. On the one hand, Respondents received substantial sums from UBS when they joined in the form of what were clearly forgivable loans. Each Respondent is experienced and sophisticated and the Notes and agreements they signed clearly call for payback. On the other hand, UBS, almost from the beginning, made it exceedingly difficult for Respondents to maintain, much less grow, the business they had before the switch to UBS. It appears that UBS' commitment to these Respondents was ineffectual and lacking. Although, it was clear it was not intentional, Respondents were subjected to an environment and business climate of no cause of their own that impeded their business. The unilateral decision by UBS and its insistence that these Respondents move their business location from Kalamazoo to Grand Rapids was the straw that broke the camel's back.

UBS changed a significant understanding, admittedly unwritten, of perhaps the most important condition of the initial employment, i.e., the location - the city - where Respondents were assigned to work. Each Respondent testified their willingness to join UBS was dependent upon them being employed in Kalamazoo. Each of them made it clear that they would have not gone with UBS had they been required to move their business location to Grand Rapids. Each Respondent testified, which was uncontested, that there were both personal and medical issues existing at the time of their hire that would have made working in Grand Rapids untenable. Working in Kalamazoo was material to their original agreement to leave their former employer and join UBS. UBS was aware of this. UBS' unilateral change of one of the material inducements of employment provides a sufficient basis to support an equitable setoff.

Arbitration is not only a legal proceeding; it is also an equitable proceeding intended to deliver a fair and equitable result. Therefore, the

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 4 of 7

Arbitrator is of the view that the burdens, lack of support and problems encountered by the Respondents that interfered with their ability to fulfill their obligations and the abilities to produce income, and their ability to market and to make a living must be considered.

It was clear to UBS that when these Respondents were hired, their client base was in the Kalamazoo geographic area. The testimony reflected that, an unexpected move to the Grand Rapids office approximately 60 miles each way, would clearly be a severe hardship to the Respondents - to not only their business and financial well-being, but to their personal lives. They had spent years building a Kalamazoo-based business. A 120 mile commute, no office for the Respondents' Kalamazoo area clients to meet in or drop into, and the likelihood that their clientele would not travel to Grand Rapids for meetings or just drop ins to discuss their financial matters, were clearly going to be serious problems. UBS, for their own reasons, chose to ignore or at least downplay these problems. That was unfair. That Kalamazoo client base was in fact what UBS wanted to capture from the beginning, and now for reasons not the fault of Respondents, UBS decided to end the effort.

The Letter of Understanding signed by Brennan on August 3, 2007, Claimant's Exhibit I, at Paragraph 2, indicated he was receiving "a cash loan . . . forgivable over six years. This Loan shall be subject to . . ." (Emphasis added)   The Promissory Note XXXXX signed by Mr. Brennan dated 9/06/2007 provides: "hereby promises to pay UBS . . ." (Claimant's Exhibit G). Springman executed similar documents (Claimant's Exhibits A and C). There is no real dispute - these were loans and Respondents clearly understood that and that upon resignation amounts yet unforgiven would be repayable to Claimant.

The situation calls for an attempt to be fair to both Claimants and Respondents by requiring a payback but with an equitable setoff. That being said, Claimant is awarded 60% of its claims, as presented in Claimant's Exhibits KK and LL, to wit, Respondent Brennan shall pay to Claimant $125,554 to satisfy the principal and interest due under the Promissory Note through June 29, 2011 (the final day of the hearing). Respondent Springman shall pay to Claimant $155,289 to satisfy the principal and interest due under his Promissory Note through June 29, 2011. Interest shall begin to accrue on any unpaid balance of this award at 5.25% per annum beginning August 1, 2011, until the amount due by such respective Respondent is paid in full. The liability of each Respondent shall be several and not joint with the other.

After reviewing Claimant's proposal for attorneys fees and costs contained in the "Declaration of Brian S. Hormozi in Support of Claimant's

Claim for Attorney's Fees and Costs" the Arbitrator finds the request for such fees and costs to be reasonable. Accordingly, 60% of that amount is also awarded with one-half (1/2) of such amount being split between each Respondent. Accordingly, each Respondent is assessed for Claimant's attorney fees and Claimant's costs as follows: Brennan: $13,382; Springman: $13,382. The liability of each Respondent for such attorney fees and costs shall be several and not joint with the other.

Because of the substantial sums to be due Claimant from each Respondent, each Respondent shall be entitled to pay the amounts to be due hereunder in 24 equal monthly installments beginning August 1, 2011, with interest at the aforesaid per annum rate (i.e., 5.25%) on the declining balance, such interest also to be paid monthly over such 24 month period, or until the principal is paid in full. Each Respondent shall have the right to prepay the award applicable to him without prepayment penalty.

FINRA fees and forum costs shall be shared 1/2 by Claimant and 1/4 to each Respondent. Such fees and costs as are attributable to each Respondent are to be several and not joint as to such Respondents.

The above constitutes the Decision, Order, and Award of this Arbitrator. The Arbitrator has provided an explanation of his decision and this award so that the parties have some rationale for the Decision. The explanation is for the information of the parties only and is not precedential in nature.

## AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing the Arbitrator has decided in full and final resolution of the issues submitted for determination as follows:

1.) Respondent William Hunter Brennan is liable for and shall pay to Claimant, UBS Financial Services, Inc., the sum of $125,554.00 in damages, including principal and interest due under the terms of the Promissory Note;

2.) Respondent William Hunter Brennan is liable for and shall pay to Claimant, UBS Financial Services, Inc., interest on the above-stated sum at the rate of 5.25% per annum from and including August 1, 2011, through and including the date this Award is paid in full;

3.) Respondent Shane Gavin Springman is liable for and shall pay to Claimant, UBS Financial Services, Inc., the sum of $155,289.00 in

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 6 of 7

        damages, including principal and interest due under the terms of the Promissory Note;

4.) Respondent Shane Gavin Springman is liable for and shall pay to Claimant, UBS Financial Services, Inc., interest on the above-stated sum at the rate of 5.25% per annum from and including August 1, 2011, through and including the date this Award is paid in full;

5.) Respondent William Hunter is liable for and shall pay to Claimant, UBS Financial Services, Inc., the sum of $13,382.00 in attorneys' fees and costs pursuant to the terms of the Promissory Note;

6.) Respondent Shane Gavin Springman is liable for and shall pay to Claimant, UBS Financial Services, Inc., the sum of $13,382.00 in attorneys' fees and costs pursuant to the terms of the Promissory Note;

7.) Each Respondent shall be entitled to pay the amounts to be due hereunder in 24 equal monthly installments beginning August 1, 2011, with interest at the aforesaid per annum rate (i.e., 5.25%) on the declining balance, such interest also to be paid monthly over such 24 month period, or until the principal is paid in full. Each Respondent shall have the right to prepay the award applicable to him without prepayment penalty; and

8.) Any relief not specifically enumerated is hereby denied with prejudice.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees

FINRA Dispute Resolution will retain the non-refundable filing fee* for each claim:

Initial Claim filing fee                                                             = $ 2,125.00

*The filing fee is made up of a non-refundable and a refundable portion.*

### Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, as a party UBS Financial Services, Inc. is assessed the following:

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 7 of 7

| | |
|---|---:|
| Member surcharge | = $ 1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $ 2,750.00 |

### Hearing Session Fees and Assessments

The Arbitrator has assessed hearing session fees for each hearing session conducted. A session is any meeting between the parties and the arbitrator, including a pre-hearing conference with the arbitrator, lasting four (4) hours or less. Fees associated with these proceedings are:

Three (3) Pre-hearing sessions with a single arbitrator x $450.00    = $ 1,350.00
Pre-hearing conferences:  August 10, 2010    1 session
                          April 11, 2011     1 session
                          May 6, 2011        1 session

Ten (10) Hearing sessions x $450.00    = $ 4,500.00
Hearing Dates:   May 9, 2011      2 sessions
                 May 10, 2011     2 sessions
                 May 11, 2011     2 sessions
                 June 28, 2011    2 sessions
                 June 29, 2011    2 sessions

Total Hearing Session Fees    = $ 5,850.00

The Arbitrator has assessed $2,925.00 of the hearing session fees to UBS Financial Services, Inc.

The Arbitrator has assessed $1,462.50 of the hearing session fees to William Hunter Brennan.

The Arbitrator has assessed $1,462.50 of the hearing session fees to Shane Gavin Springman.

### ARBITRATOR

Stuart Sinai - Public Arbitrator, Presiding Chair

Arbitrator's Signature:

/s/ Stuart Sinai                         08/01/01
Stuart Sinai                             Signature Date
Public Arbitrator, Presiding Chair

08/01/11
Date of Service (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 10-01371
Award    Page 7 of 7

| | |
|---|---|
| Member surcharge | = $ 1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $ 2,750.00 |

## Hearing Session Fees and Assessments

The Arbitrator has assessed hearing session fees for each hearing session conducted. A session is any meeting between the parties and the arbitrator, including a pre-hearing conference with the arbitrator, lasting four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Three (3) Pre-hearing sessions with a single arbitrator x $450.00 | | | = $ 1,350.00 |
| Pre-hearing conferences: | August 10, 2010 | 1 session | |
| | April 11, 2011 | 1 session | |
| | May 6, 2011 | 1 session | |
| Ten (10) Hearing sessions x $450.00 | | | = $ 4,500.00 |
| Hearing Dates: | May 9, 2011 | 2 sessions | |
| | May 10, 2011 | 2 sessions | |
| | May 11, 2011 | 2 sessions | |
| | June 28, 2011 | 2 sessions | |
| | June 29, 2011 | 2 sessions | |
| Total Hearing Session Fees | | | = $ 5,850.00 |

The Arbitrator has assessed $2,925.00 of the hearing session fees to UBS Financial Services, Inc.

The Arbitrator has assessed $1,462.50 of the hearing session fees to William Hunter Brennan.

The Arbitrator has assessed $1,462.50 of the hearing session fees to Shane Gavin Springman.

### ARBITRATOR

Stuart Sinai - Public Arbitrator, Presiding Chair

Arbitrator's Signature:

_____
Stuart Sinai
Public Arbitrator, Presiding Chair

8/1/2011
Signature Date

_____
Date of Service (For FINRA office use only)